Rel: February 10, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2022-2023

_____

### CR-18-1211

_____

**Nathaniel Dennis**

**v.**

**State of Alabama.**

**Appeal from Houston Circuit Court
(CC-12-163)**

<u>On Application for Rehearing</u>

COLE, Judge.

APPLICATION OVERRULED.

Windom, P.J., and Kellum, J., concur. McCool, J., concurs specially, with opinion, which Minor, J., joins.

CR-18-1211

McCOOL, Judge, concurring specially.

I adhere to my vote concurring in the result on original submission. Dennis v. State, [Ms. CR-18-1211, July 8, 2022] ___ So. 3d ___ (Ala. Crim. App. 2022). Although I agree that, based on binding precedent, Nathaniel Dennis was entitled to relief on his speedy-trial claim, I do not agree with all the analysis in the main opinion on original submission. Further, I do not believe that the State's application for rehearing sets forth any points of law or facts that this Court overlooked or misapprehended; thus, I concur in overruling the application for rehearing. Rule 40, Ala. R. App. P. I write specially to explain my reasons for concurring in the result on original submission.

As set forth in the main opinion on original submission, the offense in question occurred in 1981, but Dennis was not developed as a suspect until 2010 or 2011, when hairs that had been obtained from the crime scene were tested for DNA and were submitted to a national database, which resulted in a "match" to Dennis. Based on that evidence, Dennis was indicted on two counts of capital murder in May 2011. At the time of his indictment, Dennis was in prison in Virginia serving a life sentence for an unrelated charge. The case proceeded to trial in June 2019.

2

Dennis was convicted of murder made capital because it was committed during a burglary, and he was sentenced to life imprisonment without the possibility of parole. On appeal of that conviction, Dennis argued, among other things, that he was denied his right to a speedy trial in violation of the Sixth Amendment.

The United States Supreme Court has identified four factors courts should assess in determining whether a defendant has been deprived of his or her Sixth Amendment right to a speedy trial: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Barker v. Wingo, 407 U.S. 514, 530 (1972). Those factors constitute "[a] balancing test [that] necessarily compels courts to approach speedy trial cases on an ad hoc basis." Id.

"The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Barker, 407 U.S. at 530. In the present case, it is undisputed that the post-accusation delay of a little over eight years was sufficient to trigger the assessment of the other three factors.

Concerning the reason for the delay, "Barker recognizes three categories of reasons for delay: (1) deliberate delay, (2) negligent delay, and (3) justified delay." Ex parte Walker, 928 So. 2d 259, 265 (Ala. 2005). In the present case, I agree that much of the delay was negligent delay, which is weighted against the State but is "weighted less heavily against the State than is deliberate delay." Id.

Concerning the defendant's assertion of his right to a speedy trial, I agree that Dennis sufficiently asserted his right in the present case. Therefore, this factor weighs in his favor.

Lastly, I consider prejudice to Dennis. In Barker, the United States Supreme Court stated:

"Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown."

407 U.S. at 532 (footnote omitted).

4

In the present case, I agree with the main opinion that Dennis has not demonstrated actual prejudice. There has been no "oppressive pretrial incarceration," because Dennis has been – and would still be, regardless of whether Alabama ever charged him with a crime – incarcerated in Virginia on other charges. Likewise, any "anxiety and concern" would be minimal; although the outcome of the Alabama case could have been a more severe sentence, incarceration in Alabama or Virginia would be a "six of one, half a dozen of the other" scenario.

This brings us to the third prong of prejudice analysis: "the possibility that the defense will be impaired." The death or disappearance of witnesses, the failure of witnesses to recall facts clearly, and/or the inability to locate key witnesses are, indeed, the most serious of the three concerns. In this case, the fact that 30 years had already passed between the time of the crime and the time Dennis was indicted greatly minimizes the likelihood of this kind of prejudice occurring between indictment and trial. While normally this analysis includes the presumption that excessive delay "compounds" over time the longer the delay continues, see Doggett v. United States, 505 U.S. 647, 655 (1992),

I find this presumption to be of little value in the fact scenario presented by this case, for reasons I will discuss below.

Before proceeding to a more complete discussion of the facts and circumstances of this case, we must look at the current state of the law regarding speedy-trial claims as handed down by the United States Supreme Court. This brings us to a discussion of Doggett. In Doggett, the United States Supreme Court stated that "affirmative proof of particularized prejudice is not essential to every speedy trial claim." 505 U.S. at 655. See also Moore v. Arizona, 414 U.S. 25, 26 (1973) ("Barker v. Wingo expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial"). Instead, the Court has recognized that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." Doggett, 505 U.S. at 655 (emphasis added).

I want to point out, however, that there is one big factual difference between the present case and Doggett. In Doggett, unlike the present case, there was not a 30-year delay between the time of the crime and the eight-year post-accusation delay. The Doggett Court reached its

conclusion about presumed prejudice based on its determination that "such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness, cf. Arizona v. Youngblood, 488 U.S. 51, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988), and its consequent threat to the fairness of the accused's trial." Doggett, 505 U.S. at 657. Thus, the Court held that the weight assigned to negligent delay compounds over time as the presumption of evidentiary prejudice grows.

However, as I mentioned above, I question the logic of compounding the weight of a negligent post-accusation delay when there has already been a 30-year pre-accusation delay. Although I agree that evidentiary prejudice would increase for some time after the crime was committed, at some point, that increase would either cease or become minimal. In the situation at hand, a 30-year pre-accusation delay would logically seem to be much more prejudicial than an additional 8 ½ year post-accusation delay. To put it another way, it would seem logical to assume that most, if any, actual prejudice would have already occurred before indictment in this case, and that the additional delay would not

7

compound that prejudice as it might had the indictment come immediately after the commission of the crime.

Moreover, under the facts of this case, I question whether any actual prejudice could be proven based upon the evidence presented at trial. At trial, Dennis's defense was that he was not at the crime scene. He produced witnesses who testified that that they worked with Dennis at a nightclub, that it would be unusual for employees of the club to leave during their shift, and that they did not recall Dennis leaving work on the night of the crime. However, the DNA evidence specifically placed him at the crime scene. There is no indication that the trial would have proceeded differently without the post-accusation delay, and I note that the conclusive nature of the DNA evidence contradicting Dennis's alibi defense weighs strongly against any claim of actual prejudice in this case.

Had the reason for the delay been a deliberate attempt by the State to gain some impermissible advantage, I would feel differently. However, there is no dispute that the only delay in this case was negligent, which would only be outweighed by some demonstrated actual prejudice, which does not exist in this case.

Thus, I believe that, in this case, the complete lack of proof of any actual prejudice to the defendant weighs so heavily against the defendant that he should not prevail on a constitutional speedy-trial claim. However, while Dennis has not demonstrated actual prejudice, it appears that United States Supreme Court precedent requires that prejudice should be presumed under the limited facts of this particular case. Of course, I am referring back to Doggett, discussed earlier. In substance, the present situation is almost indistinguishable from the situation in Doggett. In Doggett, like the present case, the post-accusation delay was a little over eight years; thus, it triggered the speedy-trial inquiry. In Doggett, like the present case, the reason for the post-accusation delay was negligence by the government. In Doggett, like the present case, the defendant asserted in due course his right to a speedy trial. Also, like the present case, the defendant in Doggett failed to demonstrate any actual prejudice. However, because the post-accusation delay was eight and a half years, the Doggett Court determined that prejudice was presumed. The Court then weighed that presumed prejudice along with the other Barker factors and decided that, under the circumstances of that particular case, "when the presumption of prejudice, albeit

unspecified, is neither extenuated, as by the defendant's acquiescence, e.g., [Barker,] 407 U.S., at 534-536, 92 S. Ct., at 2194-2195, nor persuasively rebutted, the defendant is entitled to relief." Doggett, 505 U.S. at 658 (footnotes omitted).

There is one last point that I want to make regarding Doggett: I note that Doggett was a 5-4 decision and that the Barker "balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis" or a very fact-specific basis. Barker, 407 U.S. at 530. I agree with the following from Justice Thomas's dissent in Doggett:

> "Just as 'bad facts make bad law,' so too odd facts make odd law. Doggett's 8½-year odyssey from youthful drug dealing in the tobacco country of North Carolina, through stints in a Panamanian jail and in Colombia, to life as a computer operations manager, homeowner, and registered voter in suburban Virginia is extraordinary. But even more extraordinary is the Court's conclusion that the Government denied Doggett his Sixth Amendment right to a speedy trial despite the fact that he has suffered none of the harms that the right was designed to prevent."

Doggett, 505 U.S. at 659 (Thomas, J., dissenting).

Although I encourage the Supreme Court to revisit Doggett's speedy-trial holding, I cannot sufficiently distinguish Doggett from the present case, and, of course, this Court is bound by Doggett. Therefore, I concur that Dennis was entitled to relief on his speedy-trial claim.

10

Minor, J., concurs.